IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

LAWRENCE D. KROEGER                                                                                       PLAINTIFF

V.                                                                           CIVIL ACTION NO. 3:19-CV-00050-NBB-JMV

GEICO GENERAL INSURANCE COMPANY                                                                DEFENDANT

## **MEMORANDUM OPINION**

This cause comes before the court upon the parties' motions for partial summary judgment. Upon due consideration of the motions, responses, exhibits and applicable authority, the court is ready to rule.

### Facts and Procedural Posture

This action arises from an accident involving a motorcycle and automobile which occurred on March 28, 2017, in Olive Branch, Mississippi. Plaintiff Lawrence Kroeger was riding his motorcycle to work when Jason Woods, a non-party to this lawsuit, allegedly crossed into Plaintiff's lane in his automobile causing Plaintiff to lose control of his motorcycle and crash, though apparently no contact was made.

Plaintiff alleges that as a result of the accident he suffered life-threatening injuries including a broken clavicle, fractures to several ribs resulting in a collapsed lung, and a heart attack while under treatment for his injuries. Defendant contests that Plaintiff's heart attack resulted from the accident. Plaintiff was hospitalized at Region One Medical Center and subsequently Methodist Hospital Olive Branch from the date of the accident until April 10, 2017. Plaintiff alleges he has incurred medical expenses to date in excess of $228,000.00 and that he will continue to incur substantial hospital, doctor, physical therapy, drug, and other medical expenses in the future. He asserts the injuries left his clavicle deformed, his left lung with a

reduced diameter, and his breathing capacity diminished. He alleges the injuries he suffered have required numerous surgical procedures and extensive physical therapy. He further asserts that the injuries resulting from the accident are of a permanent nature, that he continues to suffer from these injuries and will require substantial additional medical treatment in the future, and that he will continue to suffer from the injuries for the remainder of his natural life.

Jason Woods was insured by Mississippi Farm Bureau, which tendered its liability limits of $100,000.00. Plaintiff accepted Farm Bureau's offer after obtaining consent from Defendant GEICO General Insurance Company ("GEICO"), and then released Woods from further liability. The parties agree Woods was an underinsured motorist for purposes of Mississippi law and the GEICO policies at issue. *See* Miss. Code Ann. §§ 83-11-101, *et seq.*

At the time of the accident, Plaintiff, a resident of Olive Branch, was insured by three automobile policies issued by Defendant GEICO. The first policy named Plaintiff and his wife, Katherine Kroeger, as the insureds. The second policy named Plaintiff's son Erik Kroeger, a college student at the University of Mississippi, as the insured, and the third, a West Virginia policy, named Plaintiff's son Adam Kroeger, who was at the time a college student at West Virginia University.

Defendant admits that Plaintiff is an insured under all three policies and that the first two policies, issued as Mississippi policies, may be stacked to provide combined coverage. Defendant asserts, however, that the third policy, issued to Adam Kroeger in West Virginia, cannot be stacked. Unlike the two Mississippi policies, the West Virginia policy contains two significant exclusionary clauses. First, the policy prevents the stacking of uninsured motorist coverage; and second, the policy excludes coverage of "owned but not insured" vehicles, which

2

excludes coverage for vehicles not listed in the policy. Defendant maintains that West Virginia law controls that policy.

Each GEICO policy was purchased by Katherine Kroeger from the Kroeger's home in Olive Branch, and each policy was issued to the Kroegers' home address at 4828 Antebellum Lane, Olive Branch, Mississippi. Each licensed driver, including Adam Kroeger, was licensed in Mississippi, and all automobiles under the policies were licensed in DeSoto County, Mississippi. Plaintiff and his wife paid for the automobiles' license plates and paid all premiums on the GEICO policies.

Plaintiff does not contest that Adam Kroeger's policy was issued as a West Virginia policy, but he asserts the Kroegers never requested that the policy be issued in West Virginia and indeed had no knowledge that the policy was a West Virginia policy until after this action was filed. Plaintiff's only connection to West Virginia is that his son was a student at West Virginia University, and his automobile was temporarily located in West Virginia while college was in session.

Adam was a minor licensed driver of the State of Mississippi. Lawrence and Katherine claimed Adam as a dependent for tax purposes, and Adam's permanent address was 4828 Antebellum Lane, Olive Branch, Mississippi, as listed on his driver's license and the license plate registration for the GEICO-insured vehicle he drove.

Plaintiff filed this action against Defendant GEICO on March 13, 2019, invoking this court's diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332. The existence of complete diversity is uncontested, and Plaintiff seeks damages in excess of the jurisdictional threshold of $75,000.00. Plaintiff asserts he is entitled to stacked underinsured motorist coverage under the three GEICO policies in the total amount of $2,050,000.00 for compensatory damages,

3

which represents the total stacked coverage available from the three policies,[1] less any contractual reduction for the $100,000.00 payment made by Farm Bureau. Plaintiff and Defendant have each filed motions for partial summary judgment as to the insurance coverage issue.

Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On a motion for summary judgment, the movant has the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the movant makes such a showing, the burden then shifts to the non-movant to "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When deciding a motion for summary judgment, the court must view the underlying facts in the "light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). As such, all reasonable inferences must be drawn in favor of the non-movant. *Id.* Before finding that no genuine issue for trial exists, the court must first be satisfied that no rational trier of fact could find for the non-movant. *Matsushita*, 475 U.S. at 587 (1986). "Summary judgment, although a useful device, must be employed cautiously because it is a final adjudication on the merits." *Jackson v. Cain*, 864 F.2d 1235, 1241 (5th Cir. 1989).

---

[1] Specifically, this figure represents $1,500,000.00 in coverage under Plaintiff's policy, $300,000.00 under Adam Kroeger's policy, and $250,000.00 under Erik Kroeger's policy.

Analysis

Plaintiff and Defendant agree that a conflict of law issue is at play in this action. Defendant asserts, however, that the plain language of the West Virginia policy, which includes a choice of law provision, should control. The West Virginia policy provides that it "and any amendment(s) and endorsement(s) are to be interpreted pursuant to the law of the state of West Virginia."

West Virginia law allows anti-stacking provisions in insurance contracts. *See Findley v. State Farm Mut. Auto. Ins. Co.*, 576 S.E. 2d 807, 825 (W. Va. 2002) ("There is no common law right to stack coverage available for multiple vehicles under the same policy or under two or more insurance policies. The right to stack must arise from the insurance contract itself … or from a statute…."). Further, under West Virginia law, an "owned but not insured" exclusion, which excludes all coverage for vehicles not listed in the policy, is valid for any coverage above the minimum amount of underinsured motorist coverage required by law. *See Erie Ins. Co. v. Dolly*, 811 S.E. 2d 875, 881-82 (W. Va. 2018). The GEICO West Virginia policy at issue in the present case includes both exclusions.

Such exclusions are not, however, allowed under Mississippi law. As to anti-stacking exclusions, the Mississippi Supreme Court has held:

> We now affirmatively declare that the public policy of this State mandates stacking of UM coverage for every vehicle covered under a policy, regardless of the number or amount of the premium(s) paid for UM coverage. We hereby hold that anti-stacking clauses as applied to UM coverage are against public policy, and contracts contrary to public policy are unenforceable. We point to the language of our earliest stacking case to show that the intent of our uninsured motorist law is to provide the insured with adequate protection against injury caused by an uninsured motorist:
>
>> After a careful consideration of the authorities from other jurisdictions and the requirements of our statute, we hold that the uninsured motorist coverage of each policy of liability insurance is

> available to the injured insured until all sums which he shall be entitled to recover from the uninsured motorist have been recovered. The coverage is mandatory on the insurer and this undertaking cannot be diminished by a provision in the policy. We find no words in the statute indicating that one policy providing minimum coverage is all the statute requires. The statute requiring the coverage does not say how much uninsured motorist coverage shall be provided for each accident or each vehicle or each uninsured motorist. It requires each policy to provide the minimum coverage.

*Harthcock* [*v. State Farm Mut. Auto. Ins. Co.*], 248 So. 2d [456] at 461-62 [(Miss. 1971)]. More recently, this Court reiterated its positive stand in favor of stacking:

> Stacking is firmly imbedded in our uninsured motorist law. The sort of stacking sought here, i.e., stacking multiple coverages within a single policy, has been mandated. As with other types of stacking, the rationale offered is that multiple premiums are paid and multiple (stacked) coverages should be available. However, what is important is the fact that stacking has become a positive gloss upon our Uninsured Motorist Act.
> ….
>
> Uninsured motorist coverage is designed to provide innocent injured motorists a means to recover all sums to which they are entitled from an uninsured motorist. The statute is to be liberally construed so as to achieve compensation.
> ….
>
> Unlike other jurisdictions, such as Alabama, Minnesota and Montana, which have legislatively mandated that stacking is contrary to public policy, stacking is retained in Mississippi as a "positive gloss" of our UM statute.

*Harris v. Magee*, 573 So. 2d at 653-55 (Miss. 1990) (citations omitted).

To say that an insured may contract with his insurance company to limit stacking is disingenuous. Insurance contracts essentially are contracts of adhesion. The insured has only two choices in "negotiating" the terms of his policy – he may accept the terms offered by his insurance company, or he may reject them and go to a different insurance company. When the entire insurance industry writes its policies to preclude stacking of UM coverage, attempting to circumvent case law and defeat public policy, the insured is denied any choice whatsoever. This Court has previously recognized the need to protect insureds because of their uneven bargaining power in dealing with insurance companies:

6

> It is a matter almost of common knowledge that a very small percentage of policy holders are actually cognizant of the provisions of their policies and many of them are ignorant of the names of the companies issuing the said policies. The policies are prepared by the experts of the companies, they are highly technical in their phraseology, they are complicated and voluminous and in their numerous conditions and stipulations furnishing what may be veritable traps for the unwary. Courts, while zealous to uphold legal contracts, should not sacrifice the spirit to the letter nor should they be slow to aid the confiding and innocent.
>
> *Andrew Jackson Life Insurance Co. v. Williams*, 566 So. 2d 1172, 1188-89 (Miss. 1990) (citations omitted).

*U.S. Fidelity and Guar. Co. v. Ferguson*, 698 So. 2d 77, 79-80 (Miss. 1997).

The Mississippi Supreme Court has likewise found that "owned but not insured" exclusions are also against the public policy of this state. After an extensive and detailed comparative analysis of the law in numerous jurisdictions throughout the country, the court held: "The great weight of authority supports the … contention that the ["owned but not insured"] exclusionary clause … violates the public policy of this state as manifested by the Mississippi Uninsured Motorist Act." *Lowery v. State Farm Mut. Auto. Ins. Co.*, 285 So. 2d 767, 777 (Miss. 1973).

A federal court sitting in diversity applies the choice of law rules of the forum state to determine which state's substantive law applies. *Hartford Underwriters Ins. Co. v. Foundation Health Servs., Inc.*, 524 F.3d 588, 593 (5th Cir. 2008). "Mississippi resolves choice of law issues applying the following steps: (1) determine whether the laws at issue are substantive or procedural; (2) if substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws." *Id.* (citing *Zurich American Ins. Co. v. Goodwin*, 920 So. 2d 427, 433-34 (Miss. 2006)).

7

The parties here agree that the laws at issue in the present case are substantive and contractual in nature. Mississippi courts apply the "center of gravity" test in relation to Restatement §§ 6, 188, and 193 to uninsured motorist contracts. *Hartford*, 524 F.3d at 593-94 (citing *Zurich*, 920 So. 2d at 433). The Mississippi Supreme Court has described the center of gravity doctrine as follows:

> This doctrine is a rule whereby the court trying the action applies the law of the place which has the most significant relationship to the event and parties or which, because of the relationship or contact with the event and parties, has the greatest concern with the specific issues with respect to the liabilities and rights of the parties to the litigation.

*Zurich*, 920 So. 2d at 433 (quoting *Mitchell v. Craft*, 211 So. 2d 509, 514-15 (Miss. 1968)).

Restatement § 6 outlines general policy considerations relevant to the choice of law inquiry, which include:

> (a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, (d) the protection of justified expectations, (e) the basic policies underlying the particular field of law, (f) certainty, predictability and uniformity of result and (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (1971). The criteria of § 6 are general principles. Section 188 lists "the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue." These contacts include: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188 (1971).

In the case sub judice, the place of contracting was Mississippi. The place of negotiation was Mississippi. The performance of the contract was substantially in Mississippi. The location of the risk was temporarily in West Virginia but can be said to have been principally in

Mississippi.[2] The permanent residence of Adam and Lawrence Kroeger was in Mississippi. "In general, college students are considered residents of their parents' homes, although they reside elsewhere for most of the year and visit their parents only occasionally." *Johnson v. Preferred Risk Auto. Ins. Co.*, 659 So. 2d 866, 874 (Miss. 1995). Further, GEICO delivered all three policies to, billed premiums to, and collected payments from Plaintiff's residence at 4828 Antebellum Lane, Olive Branch, Mississippi. Clearly, "Mississippi law governs because it has 'the most substantial contacts with the parties and the subject matter of the action.'" *AXA Re Property & Cas. Ins. Co. v. Day*, 162 F. App'x 316, 322 (5th Cir. 2006) (quoting *Hartford Ins. Co. v. Sheffield*, 808 So. 2d 891, 895 (Miss. 2001)).

Defendant takes issue with the application of Restatement § 188 analysis, arguing that § 193 is the more appropriate vehicle. Defendant argues that § 188 applies only "[i]n the absence of an effective choice of law by the parties…." Restatement (Second) of Conflict of Laws § 188 (1971). The court is unpersuaded, however, that the choice of law agreement included in the West Virginia policy is "effective." The language of § 188 directs the court to § 187 for this determination. Section 187 provides:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied … unless … application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.

Restatement (Second) of Conflict of Laws § 187 (1971). It is clear from the foregoing analysis that the law of West Virginia is contrary to long recognized fundamental policies of Mississippi, and it is persuasively arguable that Mississippi has a materially greater interest than West Virginia in the determination of the issues in this case. Further, in the absence of the choice of

---

[2] See, however, discussion of Restatement § 193, *infra*.

law clause in the West Virginia policy, it is clear Mississippi would be the state of the applicable law. For these reasons, the court declines Defendant's invitation to sidestep § 188 analysis.

In applying the factors of Restatement § 188, *supra*, the court does not ignore § 193, which is the section Defendant urges the court to apply. Section 193 provides that the rights created by all types of insurance contracts, except those providing life insurance

> are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflict of Laws § 193 (1971). "The location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law *provided that the risk can be located, at least principally, in a single state*." *Id.* (emphasis added). Section 193 "speaks in terms of one principal location of the insured risk." *Hartford Underwriters Ins. Co. v. Foundation Health Servs., Inc.*, 524 F.3d 588, 594 (5th Cir. 2008).

In the present case, it is difficult to determine the principal location of the risk in regard to Adam Kroeger's West Virginia policy. The insured vehicle, driven by a minor, was temporarily located in West Virginia during the college semester, but Adam's permanent residence was Mississippi, and the risk was at times located in Mississippi. It can thus be persuasively argued that there is no "principal" location of the risk insured, and in accordance with Mississippi case law, "the location of the insured risk has 'less significance' and section 193 does not compel" the application of West Virginia law under the facts of this case. *Id.* "[Section] 193 is pertinent only if there is, in fact, a single state which can be identified as the 'principal' location of the risks insured by a policy." *Id.* (quoting *Employers Mut. Cas. Co. v. Lennox Int'l, Inc.*, 375 F. Supp. 2d 500, 505 (S.D. Miss. 2005)).

10

In urging the court to rely exclusively on § 193 and its "principal location of the risk" analysis, Defendant cites *Boardman v. United Servs. Auto. Assoc.*, 470 So. 2d 1024 (Miss. 1985). In *Boardman*, USAA issued an automobile insurance policy to Col. Henry W. Boardman, a resident of Omaha, Nebraska. *Id.* at 1028. While Boardman's son Joseph was a student at Mississippi State University in Starkville, Mississippi, he accepted a summer job in Gulfport and purchased a vehicle while there that was not listed on his father's policy. *Id.* Joseph later sustained injuries as the result of an accident with an uninsured motorist in Gulfport. *Id.* at 1029. USAA denied coverage based on an "owned but not insured" exclusionary clause in Henry's policy. *Id.* The Mississippi Supreme Court, applying the center of gravity test, ruled that the "factors militated in favor of application of Nebraska law to the outcome-determinative question of whether [Joseph] was an insured under the policy." *Id.* at 1024.

Defendant's reliance on *Boardman* is misplaced because, though the court did recognize "§ 193 as among the choice of law rules applicable in this state" and adopted them as "a fair and enlightened set of principles," and though the court further acknowledged that "§ 193 provides the starting point for the choice of law inquiry" in uninsured motorist cases, the court ultimately determined that the matter at bar had "little to do with the location of the risk." *Boardman*, 470 So. 2d at 1033-34. Indeed, even after determining that the principal location of the specific risk at issue under the facts of that case was in Mississippi on the date of the automobile accident in question, the court found, after application of the factors set forth in Restatement §§ 6 and 188, that the law of Nebraska ultimately applied, as Nebraska was the location of contracting, negotiation, substantial performance, the subject matter of the contract (i.e., the *principal* location of the *multiple* risks insured against by the contract), and the residence to which the

11

policies had been issued. *Id.* at 1034. In the present case, the factors that directed the *Boardman* court to application of Nebraska law, direct this court to application of Mississippi law.

Defendant also cites *Boardman* for the proposition that an "owned but not insured" exclusion is not so offending to Mississippi's public policy that it warrants ignoring a foreign state's applicable conflicting law on the same issue. This court, however, finds *Boardman* less persuasive and less analogous than Defendant urges. While the *Boardman* court did find in favor of application of Nebraska law, which was in conflict with that of Mississippi, despite Mississippi's recognized "public policy against insurer efforts to exclude cases and persons from coverage of uninsured motorist provisions of an automobile insurance policy,"[3] as noted above, the factors on which the court relied to do so point to application of Mississippi law under the facts of this case, and the "reasonable expectation of the parties that Nebraska law would govern with respect to their contract"[4] can be replaced in the present case with the reasonable expectation that Mississippi law would govern here, despite the choice of law provision in the West Virginia contract, which this court finds should be overridden by Mississippi's long established public policy against anti-stacking provisions and "owned but not insured" exclusions in uninsured motorist contracts. *Ferguson*, 698 So. 2d at 79-80 (finding anti-stacking provisions against Mississippi public policy); *Lowery*, 285 So. 2d at 777 (finding "owned but not insured" exclusions against Mississippi public policy); *see also*, *Williamson Pounders Architects, P.C. v. Tunica County, Miss.*, 681 F. Supp. 2d 766, 772 (N.D. Miss. 2008) (finding a choice of law provision ineffective in requiring the application of a conflicting law of another state when that law violated "a fundamental and inviolable policy of the state" of Mississippi).

---

[3] *Boardman*, 470 So. 2d at 1024.
[4] *Id.*

The court finds Plaintiff's expectation that Mississippi law would govern the policy reasonable considering, inter alia, that the policy covers a minor Mississippi licensed driver domiciled in Mississippi as a resident of his parent's house in Mississippi, that the policy covers an automobile licensed in Mississippi, that the policy was issued and delivered to Mississippi, and that all premiums were billed to and paid from Mississippi. Indeed, as Plaintiff suggests, the policy should have been issued as a Mississippi policy from the outset.

In sum, the court finds that Mississippi law should govern the policies at issue in this case. The court bases its ruling on the application of the center of gravity test and the appropriate criteria set forth in the relevant sections of Restatement of Conflict of Laws to the facts of this case. In reaching this conclusion, the court finds, under the facts of this case, which point to the application of Mississippi law and the reasonable expectation of such application, that the choice of law provision of the West Virginia contract is ineffective and void as violative of long recognized "Mississippi public policy against insurer efforts to exclude cases and persons from coverage of uninsured motorist provisions of an automobile insurance policy." *Boardman*, 470 So. 2d at 1024.

## Conclusion

For the foregoing reasons, the court finds that Plaintiff's motion for partial summary judgment is well taken and should be granted and that Defendant's motion for partial summary judgment is not well taken and should be denied. A separate order in accord with this opinion shall issue this day.

This, the 28th day of April, 2020.

    /s/ Neal Biggers
NEAL B. BIGGERS, JR.
UNITED STATES DISTRICT JUDGE